# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| FEDERATION OF AMERICANS FOR CONSUMER CHOICE, INC.; JAMES HOLLOWAY; JAMES JOHNSON; TX TITAN GROUP, LLC; PROVISION BROKERAGE, LLC; and V. ERIC COUCH, | § § § § § § § | |
| *Plaintiffs,* | § § | Civil Action No. 6:24-cv-00163-JDK |
| v. | § § | |
| UNITED STATES DEPARTMENT OF LABOR and JULIE SU, in her official capacity as ACTING SECRETARY OF LABOR | § § § § § | |
| *Defendants.* | § § § | |

**BRIEF FOR *AMICUS CURIAE* CERTIFIED FINANCIAL PLANNER BOARD OF STANDARDS, INC. AND CERTIFIED FINANCIAL PLANNER BOARD OF STANDARDS CENTER FOR FINANCIAL PLANNING, INC. IN OPPOSITION TO PLAINTIFFS' MOTION FOR STAY OF EFFECTIVE DATE AND PRELIMINARY INJUNCTION**

OF COUNSEL:

Erin K. Koeppel (*pro hac vice* applications forthcoming)
District of Columbia Bar No. 469912
Leo G. Rydzewski (*pro hac vice* application forthcoming)
District of Columbia Bar No. 469979
CFP BOARD
1425 K Street NW #800
Washington, DC 20005
Tel: (202) 379-2240
Fax: (202) 379-2299
Email: ekoeppel@cfpboard.org
Email: lrydzewski@cfpboard.org

William L. Sessions
Texas Bar No. 18041500
SESSIONS & ASSOCIATES, PLLC
15851 Dallas Parkway, Suite 180
Addison, Texas 75001
Tel: (214) 217-8855
Fax: (469) 361-8119
Email: lsessions@sessionslaw.net

*Counsel for Amicus Curiae Certified Financial Planner Board of Standards, Inc. and Certified Financial Planner Board of Standards Center for Financial Planning, Inc.*

**TABLE OF CONTENTS**

STATEMENT OF INTEREST OF AMICUS CURIAE ................................................................ 1

ARGUMENT ......................................................................................................................... 3

    I.    The Evidence Disproves Plaintiffs' Claims. CFP® Professionals, Brokers, and Investment Advisers Provide Best-Interest Advice to Moderate-Income Consumers. Insurance Agents Can Too. ............................................................................................................... 4

        A.    When CFP Board adopted a fiduciary duty, moderate income investors did not lose access to advice and the number of CFP® professionals grew considerably ........................... 4

        B.    The DOL Retirement Security Rule aligns with the SEC's Regulation Best Interest, which broker-dealers have embraced. ...................................................................... 6

        C.    The DOL Retirement Security Rule will not cause advisors to stop providing financial advice to moderate-income consumers .................................................................. 10

    II.    Investors Suffered Under the 1975 Regulation. ................................................... 12

    III.    Investors Expect Financial Advice (Including About Rollover Recommendations) to be in Their Best Interest .............................................................................................. 15

    IV.    The DOL Retirement Security Rule Fills Regulatory Gaps. ........................................ 18

    V.    The Regulation is Consistent with the Statute and Complies with Precedent. .................. 21

CONCLUSION .................................................................................................................... 23

**TABLE OF AUTHORITIES**

**Cases**

*Abbit v. ING USA Annuity & Life Ins. Co.*, 774 F. App'x. 351 (9th Cir. 2019) ........................... 13

*Chamber of Com. of the U.S. v. Hugler*, 231 F. Supp. 3d 152 (N.D. Tex. 2017) ......................... 21

*Chamber of Commerce of United States v. U.S. Department of Labor*, 885 F.3d 360 (5th Cir. 2018) ............................................................................................................................ 21, 22

*Mkt. Synergy Grp, Inc. v. Dep't of Labor,* 885 F.3d 676 (10th Cir. 2018) ................................. 21

*Nat'l Assoc. for Fixed Annuities v. Perez,* 217 F. Supp. 3d 1, 23 (D.D.C. 2016) ......................... 21

**Statutes**

29 U.S.C. § 1001, *et seq.* ......................................................................................................... 12

29 U.S.C. § 1002(21)(A) ...................................................................................................... 12, 21

**Other Authorities**

AARP Research, *Unbiased Financial Advice about Retirement: Importance to Adults 50+* (January 2024), https://www.aarp.org/pri/topics/work-finances-retirement/financial-security-retirement/fiduciary-duty-retirement/ .................................................................................... 15

CFA Institute, *Investor Trust Study, Enhancing Investors' Trust* (2022), https://www.cfainstitute.org/-/media/documents/article/Enhancing-Investors-Trust-Report_2022_Online.pdf ................................................................................................ 15

CFP Board, *2024 CFP Board Access to Financial Advice Survey* (2024), https://www.cfp.net/-/media/files/cfp-board/knowledge/reports-and-research/2024-access-to-financial-advice-report.pdf. ................................................................................................................... 5, 9

CFP Board, *CFP Board Survey: Americans Want Retirement Investment Advice to be in Their Best Interest* (March 11, 2024, https://www.cfp.net/news/2024/03/cfp-board-survey-americans-want-retirement-investment-advice-to-be-in-their-best-interest ................................................ 5

CFP Board, *Code of Ethics and Standards of Conduct* (Nov. 2018), https://www.cfp.net/-/media/files/cfp-board/standards-and-ethics/cfp-code-and-standards.pdf. ............................... 5

CFP Board, *Comment Letter to the DOL Regarding Retirement Security and the Definition of Fiduciary*, U.S. Department of Labor (Jan. 2, 2024), https://www.cfp.net/-/media/files/cfp-board/news/2024/cfp-board-dol-retirement-security-comment-letter.pdf ................................ 16

CFP Board, *Comparing CFP Board's Code of Ethics and Standards of Conduct to the NAIC's Suitability in Annuity Transactions Model Regulation #275* (2023), https://www.cfp.net/-/media/files/cfp-board/standards-and-ethics/ compliance-resources/naic-comparison-guide.pdf..................................................................... 19

CFP Board, *Ethics Report: 2022 Year in Review* (June 15, 2023), https://www.cfp.net/news/2023/06/ethics-report-2022-year-in-review....................................... 1

CFP Board, *Retirement Investor Expectations from Financial Advisors Survey* (2024), https://www.cfp.net/-/media/files/cfp-board/knowledge/reports-and-research/ cfp-retirement-investor-expectations-from-financial-advisors-survey.pdf. ............................. 15

CFP Board, *Standards of Professional Conduct* (2013), https://www.cfp.net/-/media/ files/cfp-board/standards-and-ethics/compliance-resources/ standards-of-professional-conduct.pdf. ................................................................................... 5

CFP Board, *The DOL Retirement Security Rules Won't Cause Moderate-Income Investors to Lose Access to Retirement Advice. Here's Why* (2024), https://www.cfp.net/-/media/files/cfp-board/standards-and-ethics/dol-access-to-advice.pdf. .............................................................. 7

Deloitte LLP, *The DOL Fiduciary Rule: A study on how financial institutions have responded and the resulting impacts on retirement investors*, Sec. Indus. & Fin. Mkts. Ass'n (Aug. 9, 2017), https://www.sifma.org/wp-content/uploads/2017/08/Deloitte-White-Paper-on-the-DOL-Fiduciary-Rule-August-2017.pdf ...................................................................................... 9

Hispanic Leadership Fund, *Analysis of the Effects of the 2016 Department of Labor Fiduciary Regulation on Retirement Savings and Estimate on the Effects of Reinstatement* (November 2021), https://hispanicleadershipfund.org/wp-content/uploads/2021/11/FINAL_HLF-Quantria_FiduciaryRule_08Nov21.pdf.................................................................................9

Inv. Co. Inst., *Retirement Assets Total $39.9 Trillion in First Quarter 2024* (June 13, 2024), https://www.ici.org/statistical-report/ret_24_q1........................................................................ 10

LIMRA, *Annual Annuity Sales Estimates* (2023), https://www.limra.com/siteassets/newsroom/ fact-tank/sales-data/2023/q1/2013-2022-annuity-sales-final.pdf.............................................. 19

NAIC, *Suitability in Annuity Transactions Model Regulation 275*, NAIC Model Laws, Regulations, Guidelines and Other Resources, NAIC Model Reg. 275 (Spring 2020), https://content.naic.org/sites/default/files/inline-files/MDL-275.pdf........................................2

NAIC, *Suitability in Annuity Transactions Model Regulation 275, Best Interest Standard of Conduct Revisions, Frequently Asked Questions,* Q10 (2021), https://content.naic.org/ sites/default/files/inline-files/Final%20FAQ%20July%202021.pdf ........................................ 19

SEC Staff Bulletin: *Standards of Conduct for Broker-Dealers and Investment Advisers Care Obligations*, https://www.sec.gov/tm/standards-conduct-broker-dealers-and-investment-advisers ............................................................................................................ 18

SIFMA: *SEC Regulation Best Interest SIFMA strongly supports the SEC's heightened and more stringent broker-dealer best interest standard*, https://www.sifma.org/explore-issues/sec-regulation-best-interest/ ............................................................................................ 18

Spencer Look & Lia Mitchell, *The Final DOL Fiduciary Rule Has Arrived. Here's What It Means for Investors*, Morningstar (Apr. 26, 2024), https://www.morningstar.com/retirement/final-dol-fiduciary-rule-has-arrived-heres-what-it-means-investors. ................ 13, 20

Tom Quaadman, Executive Vice President, Center for Capital Markets Competitiveness, U.S. Chamber of Commerce, *Letter to the SEC on Proposed Rule Change*, U.S. Sec. and Exch. Comm'n (Sep. 5, 2018), https://www.sec.gov/comments/s7-09-18/s70918-4305958-173213.pdf ............................................................................................................... 15

U.S. Gov't Accountability Off., GAO-19-342T, *The Nation's Retirement System: A Comprehensive Re-evaluation Needed to Better Promote Future Retirement Security* (Feb. 6, 2019), https://www.aging.senate.gov/imo/media/doc/SCA_GAO_Dodara_2_6_19.pdf. ........................................................................................... 12

U.S. Gov't Accountability Off., GAO-23-105342, *Older Workers*: *Retirement Account Disparities Have Increased by Income and Persisted by Race Over Time* (July 2023), https://www.gao.gov/assets/gao-23-105342.pdf ......................................................... 12

**Regulations**

§2510.3-21, 29 CFR Part 2510, RIN 1210-AC02, April 25, 2024. ........................................... 22

81 Fed. Reg. 20,946 (Apr. 8, 2016). ................................................................................11

89 Fed. Reg. 32,122 (Apr. 25, 2024). ...........................................................................2, 11

**STATEMENT OF INTEREST OF AMICUS CURIAE**

CFP Board consists of two affiliated non-profit organizations, Certified Financial Planner Board of Standards, Inc. and Certified Financial Planner Board of Standards Center for Financial Planning, Inc. (collectively, "CFP Board"). CFP Board operates the CFP® certification program, which sets high standards of competency and ethics for financial planning in the United States. Today, more than 100,000 CFP® professionals (approximately one-third of retail financial advisors) voluntarily commit as a part of their certification to act as a fiduciary, and therefore, act in the best interests of the client at all times when providing financial advice. The CFP® professionals who make this commitment to CFP Board operate under various business and compensation models (including commission-based compensation and fee compensation) and provide professional services on behalf of investment advisers, broker-dealers, insurance companies, banks, and trust companies. CFP Board's experience with a fiduciary standard provides compelling evidence that Plaintiffs' arguments lack merit.

Per annual surveys (discussed below), what is most important to CFP® professionals is that CFP Board maintain high standards for competency and ethics while holding CFP® professionals accountable for misconduct.[1] Other professionals agree, and that has fostered an explosion in the

---

[1] Just like the Securities and Exchange Commission ("SEC") and the Financial Industry Regulatory Authority, Inc. do not guarantee the performance of those they register, CFP Board does not guarantee the performance of a CFP® professional. However, CFP Board has invested significant resources—both financially and operationally—to maintain an effective enforcement program that detects, investigates, and prosecutes misconduct, thereby upholding the certification's value for both practitioners and the public. *See* CFP Board, *Ethics Report: 2022 Year in Review* (June 15, 2023), https://www.cfp.net/news/2023/06/ethics-report-2022-year-in-review. Some examples of recent CFP Board press releases announcing public sanctions include:
- CFP Board Imposes Public Sanctions on 19 Individuals-January 11th, 2022
- CFP Board Imposes Public Sanctions on 12 Individuals-March 1st, 2022
- CFP Board Imposes Public Sanctions on 25 Individuals-May 3rd, 2022
- CFP Board Imposes Public Sanctions on 17 Individuals-July 5th, 2022
- CFP Board Imposes Public Sanctions on 33 Individuals-September 6th, 2022

1

total number of CFP® professionals by more than 25% since CFP Board's adoption of a fiduciary-at-all-times standard in 2018. This perspective – that financial professionals should give advice to that is best for the clients – mirrors that of the public. Surveys consistently show that consumers expect that the person providing them with financial advice is doing so as a fiduciary acting in their best interests. Almost all regulators have responded by adopting a fiduciary or best interest framework, and since it became effective four years ago, brokers have voiced little opposition to the SEC's Regulation Best Interest standard, which embraces key fiduciary principles (as discussed further below).

The most significant outlier is the regulation of retirement insurance products that are not regulated as securities. The National Association of Insurance Commissioners ("NAIC") adopted a best-interests-in-name-only standard for annuities (discussed further below).[2] Insurance industry advocacy groups have filed this litigation seeking to prevent the U.S. Department of Labor ("DOL") from aligning the requirements for advice on retirement investments with the reasonable expectations of investors in its Retirement Security Rule. 89 Fed. Reg. 32,122 (Apr. 25, 2024). If the Court accepts Plaintiffs' arguments, then this will leave open significant regulatory gaps that allow advisors to recommend financial products, including insurance products, that are not in the

---

- CFP Board Imposes Public Sanctions on 13 Individuals-November 1st, 2022
- CFP Board Imposes Public Sanctions on 22 Individuals-May 12th, 2023
- CFP Board Imposes Public Sanctions on 16 Individuals-July 14, 2023
- CFP Board Imposes Public Sanctions on 13 Individuals-September 15, 2023
- CFP Board Imposes Public Sanctions on 5 Individuals-November 10, 2023
- CFP Board Imposes Public Sanctions on 9 individuals-April 5th, 2024
- CFP Board Imposes Public Sanctions on 9 Individuals-April 5th, 2024
- CFP Board Imposes Public Sanctions on 6 Individuals-May 17th, 2024
- (From 2022 to 2024, CFP Board also issued several Press Releases announcing Interim Suspensions.)

[2] *See* NAIC, *Suitability in Annuity Transactions Model Regulation 275*, NAIC Model Laws, Regulations, Guidelines and Other Resources, NAIC Model Reg. 275 (Spring 2020), https://content.naic.org/sites/default/files/inline-files/MDL-275.pdf.

best interests of retirement investors, in contravention of the Employee Retirement Income Security Act of 1974's ("ERISA") mandate to provide a high level of protection for retirement assets.

The stakes are high. DOL and Morningstar, Inc. (as discussed below) have shown that tens of billions of dollars are being taken from the American public by financial advice that is in the best interest of the advisor, not the investor. While DOL's opponents have expressed concern for moderate income investors, we believe that their concerns are misdirected. Our experience shows that a fiduciary standard benefits investors across the income spectrum, including moderate income investors. CFP® professionals, including those who sell insurance products, have embraced a fiduciary standard while maintaining their business models. The DOL's updated and strengthened fiduciary rule will benefit moderate income investors, align retirement advice regulation with securities regulation, and protect the public from the harms of conflicted advice.

CFP Board has a strong interest in the outcome of this proceeding because (1) CFP Board's vision is for the public to benefit from professionals adhering to a fiduciary standard; (2) more than 100,000 CFP® professionals are competent to provide financial advice concerning the same retirement investments that the DOL Retirement Security Rule covers; and (3) government regulation should hold financial advisors providing retirement investment advice to high standards like those that other regulators and professional bodies, including CFP Board, have adopted.

**ARGUMENT**

Plaintiffs are unlikely to succeed on the merits and the equities disfavor injunctive relief because, as discussed further herein: (1) empirical research and our practical experience confirm that moderate-income investors retain ready access to financial advice when it is provided under a fiduciary standard; (2) retirement investors suffered under the prior regulation; (3) research

demonstrates that investors expect to receive best interest advice (including advice about rollover recommendations and other one-time recommendations) that is not tainted by conflicts of interest that increase costs and undermine the quality of the advice; and (4) the DOL Retirement Security Rule fills regulatory gaps and is consistent with securities regulations.

I.      **The Evidence Disproves Plaintiffs' Claims. CFP® Professionals, Brokers, and Investment Advisers Provide Best-Interest Advice to Moderate-Income Consumers. Insurance Agents Can Too.**

The evidence demonstrates that the DOL Retirement Security Rule will not cause financial professionals to stop providing financial advice to moderate-income consumers. CFP Board's *Code of Ethics and Standards of Conduct*, which includes a robust fiduciary duty, has not restricted the flow of advice to investors, including from the 64% of CFP® professionals with an insurance license. To the contrary. The number of CFP® professionals - who serve investors across the income spectrum - has grown significantly since CFP Board incorporated that fiduciary duty. The SEC's Regulation Best Interest, which parallels the DOL Retirement Security Rule (and applies to annuities that are securities), also did not restrict access to advice among any category of investor. The reality is that insurance agents also will be able to serve all types of clients under the DOL Retirement Security Rule, but will not be able to act on their unbridled conflicts of interest and take unfair advantage of their clients. In other words, if investment advisers, brokers, and CFP® professionals (including those who sell insurance) are able to act in the best interests of their clients when providing investment advice and recommendations on securities (including annuities that are securities), then so can insurance agents on insurance products that are not securities.

A.  **When CFP Board adopted a fiduciary duty, moderate income investors did not lose access to advice and the number of CFP® professionals grew considerably.**

Since CFP Board's adoption of a fiduciary standard in response to changes in investor needs and expectations, CFP® professionals have grown their business and increased their numbers

by 25%, resulting in more access to advice for moderate-income investors than ever before. CFP

Board recognizes the need for its standards to evolve with the changing times and agrees with the

DOL that regulations governing retirement investment advice must likewise evolve to fulfill

ERISA's statutory mandate to protect retirement assets and retirement savers.

- In 2007, CFP Board adopted *Standards of Professional Conduct* requiring a CFP® professional to commit to CFP Board, as part of their certification, to act as a fiduciary when providing *financial planning* or material elements of financial planning to a client. [3]

- In 2018, CFP Board adopted the *Code of Ethics and Standards of Conduct* (the "*Code and Standards*"), expanding a CFP® professional's fiduciary obligation to *all financial advice*.[4] CFP Board recognized that clients reasonably expect financial advice to be provided in their best interests, regardless of the CFP® professional's business model. The scope of CFP Board's fiduciary duty is broad, covering any communication that reasonably would be viewed as a recommendation. It also covers recommendations about any kind of financial asset, including securities and non-securities, real estate, crypto assets, insurance products, bank instruments, commodities contracts, derivative contracts, collectibles, and other financial products.

A 2024 CFP Board survey demonstrates that, after CFP Board expanded the scope of the fiduciary

duty to all financial advice, 90% of CFP® professionals chose to maintain their current required

minimum investable assets for clients rather than raising the minimum.[5] The survey data

demonstrates the continued dedication of CFP® professionals to serve clients from various

financial backgrounds, especially those in moderate-income households. Indeed, more than half of

CFP® professionals (52%) provide financial advice to clients with a household income of $0 to

---

[3] CFP Board, *Standards of Professional Conduct* (2013), https://www.cfp.net/-/media/files/cfp-board/standards-and-ethics/compliance-resources/standards-of-professional-conduct.pdf.
[4] *See* CFP Board, *Code of Ethics and Standards of Conduct* (Nov. 2018), https://www.cfp.net/-/media/files/cfp-board/standards-and-ethics/cfp-code-and-standards.pdf.
[5] CFP Board, *2024 CFP Board Access to Financial Advice Survey* (2024), https://www.cfp.net/-/media/files/cfp-board/knowledge/reports-and-research/2024-access-to-financial-advice-report.pdf.

$75,000, and two-thirds (67%) provide financial advice to clients with a household income between $75,001 and $150,000.[6]

Moreover, since CFP Board established the fiduciary requirement for all financial advice in 2018, the number of CFP® professionals has grown by more than 25% to over 100,000. The demand for CFP® professionals is strong. CFP® professionals reach every corner of the industry — working in large firms and small businesses, advising large 401(k) plans and individuals with only a few thousand dollars to invest, and using a broad range of compensation structures, including commission-based compensation:

- 67% are registered representatives of broker-dealers;

- 88% are investment adviser representatives of registered investment advisers; and

- 64% hold insurance licenses.

Far from going out of business, CFP® professionals have grown their businesses and benefitted the public at the same time. CFP® professionals have shown that any financial professional who wants to act in their client's best interest is able to do so, regardless of what products they offer or how they are compensated.

**B. The DOL Retirement Security Rule aligns with the SEC's Regulation Best Interest, which broker-dealers have embraced.**

The DOL Retirement Security Rule's requirements for retirement investment advice are intentionally aligned with the SEC's Regulation Best Interest. While the scope of the regulations' application is different, the DOL Retirement Security Rule, which applies to advice on assets in private sector qualified plans, imposes no material costs beyond those imposed by Regulation Best

---

[6] CFP Board, *CFP Board Survey: Americans Want Retirement Investment Advice to be in Their Best Interest* (March 11, 2024), https://www.cfp.net/news/2024/03/cfp-board-survey-americans-want-retirement-investment-advice-to-be-in-their-best-interest.

Interest, which applies only to securities recommendations to retail customers. In other words, and in effect, the best interest obligations that previously applied only to SEC-registered annuities now will apply to all individual retirement annuities and other non-securities retirement investments (and to plan fiduciaries as well as individual investors). The following chart demonstrates this alignment:

| Requirement[7] | DOL Retirement Security Rules | SEC Regulation Best Interest | What the DOL Retirement Security Rule Requires that Regulation Best Interest Does Not | Costs Beyond Regulation Best Interest |
|---|---|---|---|---|
| **Conduct Requirements** | Duty of loyalty and duty of care. Prohibits (a) the receipt of more than reasonable compensation for services and (b) materially misleading statements. | Duty of loyalty and duty of care. | Substantially similar. | Immaterial. |
| **Disclosures** | Status as a fiduciary; description of the best interest standard; services to be provided; conflicts of interest; and information about costs, fees, and adviser compensation. | Status as a broker-dealer, services to be provided, material fees and costs, and conflicts of interest. | Substantially similar. | Immaterial. |
| **Conflicts of Interest** | Policies and procedures to mitigate conflicts of interest, including a ban on quotas, contests, and other incentives likely to result in | Policies and procedures to identify and mitigate conflicts of interest and eliminate sales | Substantially similar. | Immaterial. |

[7]*See* CFP Board, *The DOL Retirement Security Rules Won't Cause Moderate-Income Investors to Lose Access to Retirement Advice. Here's Why* (2024), https://www.cfp.net/-/media/files/cfp-board/standards-and-ethics/dol-access-to-advice.pdf.

| | | | Substantially similar. | Immaterial. |
|---|---|---|---|---|
| | advice not in a client's best interest. | contests based on the sale of specific securities within a limited period. | | |
| **Other Policies and Procedures** | Written policies and procedures prudently designed to ensure compliance with the conduct standards and for the advisor and firm to mitigate conflicts of interest, to be updated as necessary. | Written policies and procedures reasonably designed to achieve compliance with Regulation Best Interest, including for the firm to mitigate the advisor's conflicts of interest, to be updated as necessary. | Substantially similar. | Immaterial. |
| **Annual Retrospective Review** | Annual retrospective review to assist in detecting and preventing violations of the conduct standards and the policies and procedures. | FINRA rules subject broker-dealers to similar requirements. DOL stated: "The retrospective review is based on FINRA rules governing how broker-dealers supervise" their advisors. | Substantially similar. | Immaterial. |
| **Rollover Recommendations** | A duty to consider various factors, including fees, levels of service under the existing and recommended options, and alternatives. The basis must be documented and provided to the participant in writing. | A duty to consider various factors, including fees, levels of service, available options, customer's investment profile, and risks. The SEC said it will be difficult to satisfy the standard without documenting the | Substantially similar. | Immaterial. |

| | | basis for opening the account. | | |
| --- | --- | --- | --- | --- |

Moreover, moderate-income investors did not lose access to advice because of Regulation Best Interest,[8] and they will not lose access to advice because of the DOL Retirement Security Rule.[9] A recent survey by CFP Board of CFP® professionals demonstrates that the vast majority of CFP® professionals (82%) did not raise the minimum investable assets threshold for their clients following the SEC's adoption of Regulation Best Interest.[10] What's more, Regulation Best Interest had a limited impact on CFP® professionals' client rosters, with 86% of CFP® professionals maintaining their existing client roster after the regulation's enactment.[11]

---

[8] We are aware of no evidence that broker-dealers have not provided financial advice to moderate-income investors in those states where they are subject to a state law fiduciary duty.

[9] The Securities Industry and Financial Markets Association ("SIFMA") examined the response of broker-dealers to the DOL's 2016 rule (the "SIFMA Report") and concluded that retirement savers would lose access to advice because of the rule. *See* Deloitte LLP, *The DOL Fiduciary Rule: A study on how financial institutions have responded and the resulting impacts on retirement investors*, Sec. Indus. & Fin. Mkts. Ass'n (Aug. 9, 2017), https://www.sifma.org/wp-content/uploads/2017/08/Deloitte-White-Paper-on-the-DOL-Fiduciary-Rule-August-2017.pdf.
However, several factors cast doubt on the relevance of the SIFMA Report findings to the Retirement Security Rule. First, the DOL could not evaluate the SIFMA Report that Deloitte published (some would like to call this a "Deloitte Report") because the SIFMA Report did not provide the methodology that SIFMA used or the assumptions that SIFMA made. Second, the SIFMA Report does not account for changes in the marketplace since the DOL's 2016 rule, notably the resources many firms had already invested in complying with Regulation Best Interest. Third, the SIFMA Report stated that "almost all study participants indicated that *litigation risk* has been a primary concern throughout their process to prepare for the Rule." *Id.* at 10. Unlike the 2016 Rule, however, the Retirement Security Rule does not include a Best Interest Contract Exemption, which was a key source of that prior assumed litigation risk. A paper by the Hispanic Leadership Fund is similarly irrelevant because it is about the 2016 Rule and not the Retirement Security rule. Hispanic Leadership Fund, *Analysis of the Effects of the 2016 Department of Labor Fiduciary Regulation on Retirement Savings and Estimate on the Effects of Reinstatement* (November 2021), https://hispanicleadershipfund.org/wp-content/uploads/2021/11/FINAL_HLF-Quantria_FiduciaryRule_08Nov21.pdf.

[10] *Supra,* note 5.

[11] *Id.*

**C. The DOL Retirement Security Rule will not cause advisors to stop providing financial advice to moderate-income consumers.**

Plaintiffs fail to offer specific reasons why their members cannot or will not act in their client's best interests. The DOL Retirement Security Rule has four main requirements: (1) to comply with a duty of care, (2) to comply with a duty of loyalty, (3) to avoid making misleading statements, and (4) to avoid charging unreasonable compensation. Plaintiffs do not state (and cannot state) that they are unable to:

1. Provide prudent advice;

2. Do what is best for their clients instead of themselves;

3. Avoid making misleading statements; or

4. Receive only reasonable compensation.

Advisors will not abandon this market. Financial advisors will not simply give up on providing services rather than comply with a fiduciary duty. U.S. investors have approximately 40 trillion dollars invested in retirement assets.[12] Even if there are some financial professionals who will choose not to provide financial advice to moderate-income clients because of the DOL Retirement Security Rule (which could be viewed as an admission that they were not providing best interests advice previously), there is every reason to believe that other financial professionals will step in to meet the financial advice needs of this population.

The DOL Retirement Security Rule applies only to advice offered in a position of trust and confidence, and not to mere sales pitches. Thus, the Retirement Security Rule cannot decrease access to retirement investment advice when there is no relationship of trust and confidence. In other words, the loss of access to a financial professional who is merely engaged in an arms-length

---

[12] Inv. Co. Inst., *Retirement Assets Total $39.9 Trillion in First Quarter 2024* (June 13, 2024), https://www.ici.org/statistical-report/ret_24_q1.

commercial sales transaction *does not deprive a consumer of access to investment advice*. On the other hand, requiring financial professionals who have a relationship of trust and confidence with their client to provide retirement sales recommendations under a fiduciary standard will result in millions of Americans gaining access to retirement investment advice that actually <u>is</u> in their best interests. Limiting access to "sales recommendations" that are not in the retirement investor's best interest, in circumstances where there is a relationship of trust and confidence and the retirement investor reasonably expects fiduciary advice, is a good outcome for retirement savers. This is particularly true for less wealthy investors, who need to make every dollar invested for retirement count.[13]

As shown by the experiences of financial professionals already operating under a fiduciary standard, the industry will meet the needs of consumers while adapting to the Retirement Security Rule. The trillions of dollars available for investment provide a strong incentive to do so. After

---

[13] In this regard, the DOL addressed concerns raised about the 2016 Fiduciary Rule, which treated all investment recommendations directed to a specific retirement investor or investors regarding the advisability of a particular investment or management decision as fiduciary investment advice, subject to a few narrow carve-outs. This definition applied to recommendations to retail investors that would be viewed as sales pitches. *See* 81 Fed. Reg. 20,946 (Apr. 8, 2016). In contrast, the 2024 DOL Retirement Security Rule's definition of fiduciary investment advice is much narrower than the 2016 Fiduciary Rule's definition. The 2024 DOL Retirement Security Rule specifically focuses on whether the investment recommendation can be appropriately treated as advice in a relationship of trust and confidence. *See* 89 Fed. Reg. 32,122 (Apr. 25, 2024). In other words, the definition of fiduciary investment advice is limited to those circumstances in which the investor reasonably should expect fiduciary advice. If these kinds of recommendations were not treated as fiduciary advice, then it would dishonor the investor's reasonable expectations. The 2024 DOL Retirement Security Rule avoids such inequitable results. In addition, the failure to treat these kinds of recommendations as fiduciary advice would defeat ERISA's protective purposes. Importantly, the 2024 DOL Retirement Security Rule does not treat mere sales pitches that do not meet the requirements above as fiduciary advice. Similarly, the 2024 DOL Retirement Security Rule does not treat mere investment information or education, absent an investment recommendation, as fiduciary advice. Consequently, the 2024 DOL Retirement Security Rule applies to fewer interactions between financial professionals and retirement savers than the 2016 Fiduciary Rule.

Regulation Best Interest, brokerages continued to thrive. There is compelling evidence of an industry ready and willing to adapt to the new Retirement Security Rule.

## II. Investors Suffered Under the 1975 Regulation.

In enacting ERISA in 1974, Congress intended to provide a high level of protection for retirement assets in employer-sponsored plans and individual retirement accounts. *See* 29 U.S.C. § 1002(21)(A) ( "…a person is a fiduciary with respect to a plan to the extent… (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so….").[14] That broad definition of who is a fiduciary has no limitations on the timing or nature of the advice other than that it be a compensated recommendation about "any moneys or other property" of a plan. *Id.*

The DOL's 1975 regulation, however, is much narrower than the statutory definition and is laden with huge gaps that have persisted for 50 years. The resulting harm to retirement investors has steadily increased as traditional pensions have faded and retirement savers have been forced to fend for themselves in complex financial markets. Retirement investing has changed since 1975. Since then, Congress enacted legislation authorizing 401(k) plans, rollovers to individual retirement accounts and individual retirement annuities became increasingly common, and society shifted away from defined benefit pension plans. The result is that most workers today are personally responsible for managing their own retirement savings.[15] As DOL noted in the

---

[14] In ERISA, Congress also provided considerable retirement investment benefits, including deferral of taxation of contributions, tax deductions for contributions, deferral of taxation of investment gains and income, protection from claims of creditors, and protection from bankruptcy. *See generally* 29 U.S.C. § 1001, *et seq.*

[15]*See, e.g.,* U.S. Gov't Accountability Off., GAO-23-105342, *Older Workers*: *Retirement Account Disparities Have Increased by Income and Persisted by Race Over Time* (July 2023), https://www.gao.gov/assets/gao-23-105342.pdf; U.S. Gov't Accountability Off., GAO-19-342T, *The Nation's Retirement System: A Comprehensive Re-evaluation Needed to Better Promote*

Retirement Security Rule, the shift toward individual control over retirement investing (and the associated shift of risk to individuals) has been accompanied by a dramatic increase in the variety and complexity of financial products and services available to retirement investors, widening the information gap between investment advice providers and their clients. Retirement investors need high quality advice from financial professionals that is not tainted by conflicts of interest.

The problem is that many of the financial professionals who these investors rely upon to navigate this complex system are not subject to a fiduciary "best interest" standard and exploit regulatory gaps to steer their clients toward retirement products that are more profitable for the advisor instead of recommending options that would better serve client needs. The harm this has caused Americans is staggering. Morningstar estimates that in the next ten years, the DOL Retirement Security Rule will save retirement plan participants $55 billion in fees, while saving investors who roll over plan assets into fixed-indexed annuity products another $32.5 billion.[16] As such, there is an $80 billion incentive for fixed indexed annuity providers (and others) to retain the current regulatory framework.

Financial professionals and their firms have powerful incentives to put their own best interests ahead of their clients. For example, if a financial professional recommends a rollover of 401(k) plan account assets to ten clients who each have $200,000 in account value, and the financial professional earns a 7% commission on indexed annuity sales, then the financial

_Future Retirement Security_ (Feb. 2019), https://www.aging.senate.gov/imo/media/doc/SCA_GAO_Dodara_2_6_19.pdf.

[16] Spencer Look & Lia Mitchell, _The Final DOL Fiduciary Rule Has Arrived. Here's What It Means for Investors_, Morningstar (Apr. 26, 2024), https://www.morningstar.com/retirement/final-dol-fiduciary-rule-has-arrived-heres-what-it-means-investors.

professional (or their firm) will receive a sales commission of $140,000.[17] If the financial professional recommends that the investor keep their money in the plan, then the financial professional will receive no compensation. This says nothing about whether the rollover was in each client's best interest, only that recommending the annuity was far more lucrative to the financial professional than leaving the 401(k) assets in place. A $140,000 commission is a powerful incentive for a financial advisor to act in their own interest, not the client's best interest.

The retirement investor who receives financial advice that is not in their best interest is likely to experience a shorter and less secure retirement. The clients in the example above do not pay the advisor $140,000 up front. However, it is the investor who absorbs the cost of the financial advisor's commission. This loss occurs in a much less transparent way, through a lower investment performance each year that adds up over time.[18] These small differences can lead to enormous losses of retirement balances, with significant consequences for an investor's retirement security. For some, a decrease in financial assets resulting from financial advice that is not in their best interest may mean having to retire much later than desired. For others, it may mean not having as much money to spend in retirement, particularly in an economy faced with high inflation.

Without the DOL Retirement Security Rule, it will remain perfectly legal for advisors to offer conflicted advice that takes billions of dollars from investors.

---

[17]*See Abbit v. ING USA Annuity & Life Ins. Co.*, 774 F. App'x. 351 (9th Cir. 2019) (No. 3:13-cv-02310-GPC-WVG), Amended Complaint at 6 (alleging that Plaintiff "lost as much as 20%" of the invested amount on the first day of the fixed indexed annuity contract).
[18] The investor also must pay any applicable "surrender charge" for withdrawing funds from the annuity before the maturity date, with the surrender charge effectively reimbursing the product manufacturer for the commission paid to the advisor.

### III. Investors Expect Financial Advice (Including About Rollover Recommendations) to be in Their Best Interest

The DOL Retirement Security Rule properly removes the overly restrictive requirement found nowhere in the authorizing statute that a person must provide advice to the plan (or retirement investor) "on a regular basis." In so doing, the DOL Retirement Security Rule aligns with the reasonable expectations of retirement investors, who overwhelmingly expect financial professionals to provide them with financial advice that is genuinely in their best interests, regardless of how often that advice is provided:

- The U.S. Chamber of Commerce's Center for Capital Markets Competitiveness found in a 2018 survey that 97% of U.S. investors *already believed* that their financial professionals had their best interest in mind.[19]

- Retail investors value financial professionals who will be "trusted to act in my best interest" more than any other attribute when looking to hire a financial professional, according to a 2022 CFA Institute study.[20]

- 89% of investors age 50 and older who have used a financial professional expect them to provide advice in their best interest, according to December 2023 AARP survey.[21]

A recent CFP Board survey found that nearly 97% of Americans agree that financial professionals who provide one-time recommendations or other one-time retirement investment advice should be required to act in their client's best interest, including a recommendation to roll

---

[19] Tom Quaadman, Executive Vice President, Center for Capital Markets Competitiveness, U.S. Chamber of Commerce, *Letter to the SEC on Proposed Rule Change*, at 2, U.S. Sec. and Exch. Comm'n (Sep. 5, 2018), https://www.sec.gov/comments/s7-09-18/s70918-4305958-173213.pdf.
[20] CFA Institute, *Investor Trust Study, Enhancing Investors' Trust* (2022), https://www.cfainstitute.org/-/media/documents/article/Enhancing-Investors-Trust-Report_2022_Online.pdf (reporting that 34% of retail investors chose "trusted to act in my best interest" as the most important attribute when deciding to hire a financial advisor).
[21] AARP Research, *Unbiased Financial Advice about Retirement: Importance to Adults 50+* (January 2024), https://www.aarp.org/pri/topics/work-finances-retirement/financial-security-retirement/fiduciary-duty-retirement/.

over funds from a workplace retirement savings program (such as a 401(k) plan) into an IRA.[22]

According to this survey, which CFP Board commissioned with the Center for Economic and Social Research at the University of Southern California in 2024, nearly every American polled (92%) already assumed that the financial professional who recommended moving their funds out of a workplace retirement savings program into an IRA was required to make that recommendation in their best interest. Americans widely believe that a financial professional giving such advice is doing so as a fiduciary. Only 5% of survey respondents *did not* expect the financial professional to fulfill a fiduciary role regarding advice on rolling over workplace retirement savings into an IRA or annuity.

How a financial professional is paid should not determine whether they must act in their client's best interests when providing retirement investment advice. Neither should the method of compensation (commission or fee) or the frequency of that advice (one-time or ongoing). Conflicts occur in every business model and compensation structure, and calling advice that is provided in a relationship of trust and confidence a "sales recommendation" does not change what it is – advice provided for compensation that ERISA covers.

Whether and how to roll over employer-sponsored retirement assets might be the single most important financial decision in that person's life. Those providing retirement investment advice invite the recipient to trust the giver of the advice. While opponents offer the conclusion that there is no relationship of trust and confidence, their language demonstrates otherwise. CFP Board is not aware of any financial professional who, while recommending a retirement investment product, has attempted to disclaim that there is a relationship of trust and confidence

---

[22] CFP Board, *Retirement Investor Expectations from Financial Advisors Survey* (2024), https://www.cfp.net/-/media/files/cfp-board/knowledge/reports-and-research/cfp-retirement-investor-expectations-from-financial-advisors-survey.pdf.

by using language similar to the following (which opponents have used in court documents and other public statements):[23]

- I am acting as a salesperson in describing the benefits of this investment to you.

- We do not have a relationship of trust. This means you should make your own determination and not place trust in me.

- You are not paying me to provide my expertise or independent judgment.

- This is an arm's length sales transaction, which means I am acting in my own self-interest.

- Working with me is like buying a car. I am inviting you to buy an investment product in the same way that a car dealer invites you to buy a car.

- The fact that I am urging you to buy a product does not mean that the product is in your best interests.

While the Court may find these statements jarring, CFP Board has not created them out of whole cloth. They are based upon the actual statements that opponents have made in describing their relationship with their clients.

Financial professionals providing individualized retirement advice have a relationship of trust and confidence with the retirement investor *because that is what a retirement investor reasonably expects and financial professionals have led them to believe*. Accordingly, the fiduciary standard for these relationships is appropriate, is consistent with the ERISA statutory language, and fulfills Congress' protective purposes. To hold otherwise would defeat retirement investors' reasonable expectations, be inconsistent with ERISA, and undermine Congress' protective purposes.

---

[23] CFP Board, *Comment Letter to the DOL Regarding Retirement Security and the Definition of Fiduciary*, at 9 nn.28-33, U.S. Department of Labor (Jan. 2, 2024) (collecting citations for these statements), https://www.cfp.net/-/media/files/cfp-board/news/2024/cfp-board-dol-retirement-security-comment-letter.pdf.

**IV.     The DOL Retirement Security Rule Fills Regulatory Gaps.**

Significantly, the DOL Retirement Security Rule closes gaps in the outdated 1975 definition of an investment advice fiduciary subject to ERISA's high standards of loyalty and care. This definition is consistent with the broad statutory definition. In contrast, the prior DOL regulatory definition of fiduciary completely excluded one-time advice (including one-time advice to roll over plan assets to a fixed indexed annuity), and thereby carved out a significant portion of retirement investment advice that financial professionals provide for a fee or other compensation, direct or indirect. The prior regulatory definition, which is inconsistent with the ERISA authorizing statute, also is inconsistent with the numerous other standards (the SEC's Regulation Best Interest for broker-dealers, the SEC's fiduciary standard for investment advisers, and the NAIC Model Regulation for annuity transactions) that do not have a one-time advice exclusion.

The DOL Retirement Security Rule will fill major gaps. Securities regulators already require securities professionals to act in an investor's best interest when providing investment advice or investment recommendations, regardless of whether the securities professional is paid a fee or a commission. In 2019, in recognition of the expansion in the number of retail investors and the complexity of many products, the SEC reaffirmed the fiduciary standard for investment advisers and adopted Regulation Best Interest for broker-dealers, drawing from "key fiduciary principles."[24] Regulation Best Interest does not, however, cover significant retirement investment recommendations, as it applies only to securities.

---

[24] In Regulation Best Interest, the SEC used the term "best interest" instead of fiduciary. The NAIC uses the term "best interest but, for the reasons set forth in this brief, it does not have a true best interest standard. The result of all of this is that the Court needs to examine the actual requirements that the regulations impose. Since the SEC adopted Regulation Best Interest, the SEC has issued guidance to make clear that Regulation Best Interest is effectively the same as a fiduciary standard, with the exception that Regulation Best Interest does not impose a monitoring requirement. *See, e.g.,* SEC Staff Bulletin: *Standards of Conduct for Broker-Dealers and Investment Advisers Care*

While variable annuities are securities and thus advice and recommendations relating to them are subject to the SEC's enhanced standards of conduct, fixed index annuities (which in 2022 had a sales market of $210 billion, well surpassing sales of variable annuities[25]) generally are not securities and in most states are subject to weak state insurance regulation. State insurance regulation suffers from major gaps that render it incapable of adequately protecting retirement savers from conflicts of interest. Most states have adopted an NAIC Model Regulation about suitability for annuity transactions that has significant shortcomings.[26] The NAIC Model Regulation states that a financial professional acts in the best interest of the retirement investor if the financial professional satisfies four obligations, but none of those obligations requires financial professionals to act in the best interests of the retirement investor.

Moreover, unlike the SEC's Regulation Best Interest, which applies a conflict of interest (and mitigation of conflict of interest) obligation to variable annuities (as securities), the NAIC Model Regulation excludes both cash and non-cash compensation from its definition of "material

---

*Obligations*, https://www.sec.gov/tm/standards-conduct-broker-dealers-and-investment-advisers. In the industry, financial services firms equate Regulation Best Interest with the fiduciary standard. *See, e.g.,* SIFMA, *SEC Regulation Best Interest SIFMA strongly supports the SEC's heightened and more stringent broker-dealer best interest standard*, https://www.sifma.org/explore-issues/sec-regulation-best-interest/. In this brief, we note that the requirements of the DOL Retirement Security Rule are not materially different from the requirements of Regulation Best Interest – they just apply to a different category (retirement investments versus securities). More significantly, and as discussed further below, what Plaintiffs don't do is tell the Court which component of the DOL Retirement Security Rule is difficult for them to follow. Is it the duty of care, duty of loyalty, duty to avoid unreasonable compensation, or duty to avoid making misleading statements?

[25] LIMRA, *Annual Annuity Sales Estimates* (2023), https://www.limra.com/siteassets/newsroom/fact-tank/sales-data/2023/q1/2013-2022-annuity-sales-final.pdf.

[26] These are only some of the shortcomings of the NAIC Model Regulation. CFP Board issued a full guide to warn CFP® professionals about the limitations of the NAIC Model Regulation. *See* CFP Board, *Comparing CFP Board's Code of Ethics and Standards of Conduct to the NAIC's Suitability in Annuity Transactions Model Regulation #275* (2023), https://www.cfp.net/-/media/files/cfp-board/standards-and-ethics/compliance-resources/naic-comparison-guide.pdf.

conflict of interest."[27] This defies logic. Compensation conflicts are among the most prevalent and significant conflicts of interest. Cash compensation (like commissions) and non-cash compensation (like sales contests) incentivize financial professionals to recommend or sell products that are not in a retirement investor's best interest. Nonetheless, the NAIC Model Regulation imposes no requirement to identify or reasonably manage material conflicts of interest arising from fixed index annuity sales compensation. The DOL Retirement Security Rule eliminates this flaw by requiring mitigation of conflicts of interest related to fixed index annuities, including by managing conflicts arising from differences in the total commission a professional would receive for different annuities.

In addition, both Regulation Best Interest and the NAIC Model Regulation apply only to recommendations to retail customers, and thus they do not apply to recommendations to employers who sponsor 401(k) plans. The DOL Retirement Security Rule fills this gap by extending the fiduciary duty to advice from broker-dealers and insurance producers to retirement plan fiduciaries. This is significant. Fiduciaries of small plans often do not have specialized investment expertise and depend on recommendations from financial professionals on the complexities of constructing a prudent 401(k) plan investment lineup. Morningstar quantified the potential benefits from filling this gap as exceeding $55 billion in the first 10 years and $130 billion in the subsequent 10 years due to reductions in costs associated with investing through their plans, with over 80% of these savings experienced by small-plan participants.[28] Even plan fiduciaries responsible for large

---

[27] *See* NAIC, *Suitability in Annuity Transactions Model Regulation (#275), Best Interest Standard of Conduct Revisions, Frequently Asked Questions,* Q10 (2021), https://content.naic.org/sites/default/files/inline-files/Final%20FAQ%20July%202021.pdf ("the NAIC determined that compensation is not a material conflict of interest.")

[28] Spencer Look & Lia Mitchell, *The Final DOL Fiduciary Rule Has Arrived. Here's What It Means for Investors*, Morningstar (Apr. 26, 2024) https://www.morningstar.com/retirement/final-dol-fiduciary-rule-has-arrived-heres-what-it-means-investors.

portfolios may need fiduciary advice to make decisions with respect to categories of investment or financial transactions for which they lack expertise.

Finally, neither Regulation Best Interest nor the NAIC Model Regulation covers real estate, many insurance products, commodities, certificates of deposit, other bank products, and certain cryptocurrencies. The DOL Retirement Security Rule applies to retirement investment advice on each of these investment categories. Further, as demonstrated below, the DOL Retirement Security Rule properly aligns with Regulation Best Interest, the SEC regulation that prevents brokers from providing conflicted advice that harms investors. Plaintiffs ask this Court[29] to resuscitate a dinosaur.

## V. The Regulation is Consistent with the Statute and Complies with Precedent.

Finally, the Court should uphold the revised regulatory definition because it is entirely consistent with the statute and Fifth Circuit precedent. Section 3(21)(A) of ERISA (29 U.S.C. §1002(21)(A)) provides in relevant part that:

> "…a person is a fiduciary with respect to a plan to the extent… (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so…."

---

[29] Most of the judges who entertained challenges to the 2016 Fiduciary Rule that the DOL adopted in 2016 (including the Chief Judge of the Fifth Circuit) agreed that there was no legal basis for the challenges. *See Chamber of Commerce of United States v. U.S. Department of Labor*, 885 F.3d 360 (5th Cir. 2018) (C.J. Stewart, *dissenting*) ("the DOL's exercise was nonetheless lawful and consistent with the Congressional directive to "prescribe such regulations as [the DOL] finds necessary or appropriate to carry out [ERISA's provisions].") *See also Mkt. Synergy Grp, Inc. v. Dep't of Labor,* 885 F.3d 676 (10th Cir. 2018); *Mkt. Synergy Grp, Inc. v. Dep't of Labor*, No. 16-CV-4083-DDC-KGS, 2017 WL 661592 (D. Kan. Feb. 17, 2017); *Chamber of Com. of the U.S. v. Hugler*, 231 F. Supp. 3d 152 (N.D. Tex. 2017), *rev'd Chamber*, 885 F.3d 360; *Nat'l Assoc. for Fixed Annuities v. Perez,* 217 F. Supp. 3d 1, 23 (D.D.C. 2016). Two judges on the Fifth Circuit agreed to strike down the 2016 Rule. *See Chamber,,* 885 F.3d. at 384. All Plaintiffs have filed their challenges to the 2024 DOL Retirement Security Rule in the Fifth Circuit.

The DOL Retirement Security Rule is more limited than the statutory definition. In relevant part, it applies only where:

> "The person either directly or indirectly (e.g., through or together with any affiliate) makes professional investment recommendations to investors on a regular basis as part of their business and the recommendation is made under circumstances that would indicate to a reasonable investor in like circumstances that the recommendation is based on review of the retirement investor's particular needs or individual circumstances, reflects the application of professional or expert judgment to the retirement investor's particular needs or individual circumstances, and may be relied upon by the retirement investor as intended to advance the retirement investor's best interest…."

Retirement Security Rule: Definition of an Investment Advice Fiduciary, §2510.3-21, 29 CFR Part 2510, RIN 1210-AC02, April 25, 2024. This carefully crafted language comports with the *Chamber* decision, where the Fifth Circuit held that ERISA's definition of an investment advice fiduciary incorporates the common law concept of "trust and confidence." 885 F.3d at 376. The DOL has therefore heeded the Fifth Circuit's decision by ensuring that the Retirement Security Rule applies only under circumstances where it is reasonable to believe that a relationship of trust and confidence exists between adviser and client.

## CONCLUSION

For these reasons, the amici curiae request this Court to find for the Defendants and deny

the Plaintiffs' Motion for Stay of Effective Date and Preliminary Injunction.

Dated: June 21, 2024

OF COUNSEL:

| | |
|---|---|
| Erin K. Koeppel (*pro hac vice* application forthcoming) | William L. Sessions |
| District of Columbia Bar No. 469912 | Texas Bar No. 18041500 |
| Leo G. Rydzewski (*pro hac vice* application forthcoming) | SESSIONS & ASSOCIATES, PLLC |
| | 15851 Dallas Parkway, Suite 180 |
| District of Columbia Bar No. 469979 | Addison, Texas 75001 |
| CFP BOARD | Tel: (214) 217-8855 |
| 1425 K Street NW #800 | Fax: (469) 361-8119 |
| Washington, DC 20005 | Email: lsessions@sessionslaw.net |
| Tel: (202) 379-2240 | |
| Fax: (202) 379-2299 | *Counsel for Amicus Curiae Certified* |
| Email: ekoeppel@cfpboard.org | *Financial Planner Board of Standards, Inc.* |
| Email: lrydzewski@cfpboard.org | *and Certified Financial Planner Board of* |
| | *Standards Center for Financial Planning, Inc.* |

# CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2024, a true and correct copy of the above and foregoing document has been served electronically using the CM/ECF system, which will subsequently send copies to all counsel of record registered to accept electronic service in this matter.

Dated: June 21, 2024

*/s/ William L. Sessions*

*Counsel for Amicus Curiae Certified Financial Planner Board of Standards, Inc. and Certified Financial Planner Board of Standards Center for Financial Planning, Inc.*