IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| FEDERATION OF AMERICANS FOR CONSUMER CHOICE, INC.; JAMES HOLLOWAY; JAMES JOHNSON; TX TITAN GROUP, LLC; PROVISION BROKERAGE, LLC; and V. ERIC COUCH, <br><br>*Plaintiffs,* <br><br>v. <br><br>UNITED STATES DEPARTMENT OF LABOR and JULIE SU, in her official capacity as ACTING SECRETARY OF LABOR, <br><br>*Defendants.* | § § § § § § § § § § § § § § § § § § <br><br> C.A. No. 6:24-cv-00163 |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR
STAY OF EFFECTIVE DATE AND PRELIMINARY INJUNCTION**

Andrew G. Jubinsky
Texas Bar No. 11043000
andy.jubinsky@figdav.com
Parker D. Young
Texas Bar No. 22204050
parker.young@figdav.com
Don Colleluori
Texas Bar No. 04581950
don.colleluori@figdav.com

**FIGARI + DAVENPORT, LLP**
901 Main Street, Suite 3400
Dallas, Texas 75202
T: (214) 939-2000
F: (214) 939-2090

**ATTORNEYS FOR PLAINTIFFS**

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT AND AUTHORITIES ............................................................................... 1

    A. The 2024 Fiduciary Rule Conflicts with the Text of ERISA ............................................. 1

    B. The Response Contorts the Purpose and Scope of the Five-Part Test. ............................... 4

    C. The 2024 Fiduciary Rule is Not Consistent with *Chamber of Commerce*. ....................... 5

    D. The 2024 Fiduciary Rule Impermissibly Equates Sales Commissions with a Fee for the Provision of Investment Advice. ................................................................. 10

    E. The 2024 Fiduciary Rule and Amended PTE 84-24 Improperly Attempt to Expand the DOL's Regulatory Authority by Conflating Title I and Title II Plans ........... 11

    F. The 2024 Fiduciary Rule and Amended PTE 84-24 are Unreasonable, Arbitrary, and Capricious ......................................................................... 12

    G. The Balance of Harms and Public Interest Support the Issuance of a Preliminary Injunction. .................................................................................. 14

    H. Preliminary Injunctive Relief Should Not be Limited to Plaintiffs. ................................ 15

III. CONCLUSION ................................................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**         **Page(s)**

*Braidwood Mgmt., Inc. v. Becerra*,
   No. 23-10326, 2024 WL 3079340 (5th Cir. June 21, 2024) ......................................................15

*Career Colleges & Sch. of Texas v. United States Dep't of Educ.*,
   98 F.4th 220 (5th Cir. 2024) .....................................................................................................15

*Chamber of Commerce of United States of Am. v. United States Dep't of Labor*,
   885 F.3d 360 (5th Cir. 2018) ............................................................................................. passim

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*,
   467 U.S. 837 (1984) ..................................................................................................................13

*Loper Bright Enterprs. v. Raimondo*,
   No. 22-451, 2024 WL 3208360 (U.S. June 28, 2024) ..............................................................13

*Mertens v. Hewitt Assocs.*,
   508 U.S. 248 (1993) ................................................................................................................1, 3

*Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.*,
   545 U.S. 967 (2005) ....................................................................................................................4

*Pegram v. Herdrich*,
   530 U.S. 211 (2000) ....................................................................................................................3

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996) ....................................................................................................................3

*W. Virginia v. Env't Prot. Agency*,
   142 S. Ct. 2587 (2022) ..............................................................................................................13

**Statutes**

29 U.S.C. § 1002(21)(A)(ii) ................................................................................................................2

**Other Authorities**

84 Fed. Reg. 33318 (July 12, 2019) ...................................................................................................8

84 Fed. Reg. 33681 (July 12, 2019) ...................................................................................................9

89 Fed. Reg. 32122 (April 25, 2024) .....................................................................................8, 10, 13

Plaintiffs submit this reply brief in support of their Motion for Stay of Effective Date and Preliminary Injunction and Brief in Support Thereof ("Motion") [Doc. 8][1]:

## I. INTRODUCTION

Plaintiffs' Motion details the multiple ways in which the 2024 Fiduciary Rule runs afoul of the Fifth Circuit's decision in *Chamber of Commerce of United States of Am. v. United States Dep't of Labor*, 885 F.3d 360, 388 (5th Cir. 2018). Unable to mount a credible argument to the contrary, the DOL's response ("Response") [Doc. 20] instead (1) ignores or mischaracterizes key aspects of Fifth Circuit's ruling and (2) puts forward a series of irrelevant and strawman arguments in an effort to divert the Court's attention. Despite its repeated insistence that the new rule is consistent with *Chamber of Commerce*, the DOL is ultimately arguing, both implicitly and explicitly, that the Fifth Circuit's decision was wrong. However, neither the DOL nor the Court may ignore *Chamber of Commerce*'s binding determination as to what Congress intended when it used the term fiduciary in ERISA. Because the 2024 Fiduciary Rule and amended PTE 84-24, like the 2016 Fiduciary Rule, are fundamentally inconsistent with the meaning of that term as explained by the Fifth Circuit, they must be vacated.

## II. ARGUMENT AND AUTHORITIES

**A. The 2024 Fiduciary Rule Conflicts with the Text of ERISA.**

The DOL begins its argument with the remarkable assertion that Plaintiffs have identified no conflict between the 2024 Fiduciary Rule and the statutory text of ERISA, which the DOL characterizes as "expansive." [Response at 15.] Citing cases such as *Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993), the Response argues that ERISA defines fiduciary in "functional terms,"

---

[1] Defined terms used herein shall have the same meaning as in the Motion. Unless otherwise indicated, all emphases are supplied by counsel.

thereby "expanding the universe of persons subject to fiduciary duties." [Response at 15 (quoting *Mertens*, 508 U.S. at 262).] According to the DOL, "the statutory text makes clear that Congress did not limit fiduciary status to those already recognized as fiduciary under the common law." [Response at 16.] Of course, the Court need only read the opinion in *Chamber of Commerce* to immediately recognize that this starting premise of the Response has already been emphatically rejected by the Fifth Circuit.

As explained in the Motion, the Fifth Circuit held in *Chamber of Commerce* that Congress's use of "fiduciary" in ERISA was intended to incorporate the well-settled common law meaning of that term, which turns on the existence of a special relationship of trust and confidence between the parties, and rejected the DOL's argument that this presumptive common law meaning had been displaced by the statutory text or structure of ERISA. [Motion at 12-13 (citing *Chamber of Commerce*, 885 F.3d at 369-72).] The Fifth Circuit explained that "Congress was well aware of the distinction … between investment advisers, who were considered fiduciaries, and stockbrokers and insurance agents, who generally assumed no such status in selling products to their clients" and, if it had intended to abrogate that distinction in ERISA, it would have said so explicitly. *Id*. at 372-73. Moreover, the DOL's assertion that the language "investment advice for a fee" in 29 U.S.C. § 1002(21)(A)(ii) is broad enough to encompass individual sales transactions cannot be squared with the last clause of that provision, which refers to a person who "has any authority or responsibility" to render such investment advice. *Chamber of Commerce*, 885 F.3d at 373. "Only in DOL's semantically created world do salespeople and insurance brokers have 'authority' or 'responsibility' to 'render investment advice.' The DOL interpretation, in sum, attempts to rewrite the law that is the sole source of its authority." *Id*.

Notably, in reaching its conclusion, the Fifth Circuit specifically rejected the DOL's

argument that *Mertens* and its progeny compelled a different result. *Id*. at 377 ("There is also no merit in DOL's reliance on *Mertens* for the broader proposition that ERISA departed from the common law definition of 'fiduciary.'"). The Court explained that, while ERISA "'expand[ed] the universe of persons subject to fiduciary duties' by defining 'fiduciary' 'not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan,'" *id*. (quoting *Mertens*, 580 U.S. at 262) (emphasis original), that did not affect the proper interpretation of the investment advice for a fee provision at issue here:

> [A]lthough ERISA "abrogate[d] the common law in certain respects" concerning "formal trusteeship," "we presume that Congress retained all other elements of common-law [fiduciary status] that are consistent with the statutory text because there are no textual indicia to the contrary." *Universal Health Servs., Inc. v. United States*, [579 U.S. 176, 187 n.2] (2016). There is no inconsistency between the statutory structure and the common law trust and confidence standard that "requires departing from common-law trust requirements."

*Chamber of Commerce*, 885 F.3d at 378 & n. 12 (distinguishing *Varity Corp. v. Howe*, 516 U.S. 489 (1996) and *Pegram v. Herdrich*, 530 U.S. 211 (2000)).

Apparently recognizing that its argument is foreclosed by the Fifth Circuit's analysis, the DOL ultimately comes out and asserts that *Chamber of Commerce* was simply wrong. Citing the same line of cases, the DOL argues the "Fifth Circuit's decision inverts the most straightforward reading of how Congress was using the well-recognized 'fiduciary' category," and that Congress did not intend to incorporate "the common law requirements for who was already a fiduciary apart from ERISA." [Response at 21, n. 8.] However, this Court is bound by *Chamber of Commerce*'s holding to the contrary. And the DOL is likewise without authority to issue a new regulation that is inconsistent with a statutory provision that has been authoritatively construed by the Fifth Circuit in vacating the 2016 Fiduciary Rule. As the Supreme Court has explained, a "court's prior judicial construction of a statute trumps an agency construction … if the prior court decision holds that its

construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005). That is exactly what the Fifth Circuit did in *Chamber of Commerce*, and the DOL may not simply ignore its holding in issuing the 2024 Fiduciary Rule.

### B. The Response Contorts the Purpose and Scope of the Five-Part Test.

The Response also willfully ignores and contorts what the Fifth Circuit had to say about the five-part test. First, the DOL repeatedly argues that ERISA's text is "broader" than the five-part test and accuses Plaintiffs of improperly trying to impose a more narrow regulatory standard on what it claims is the expansive scope of the term "investment advice for a fee." [Response at 1, 12, 17.] Nonsense. *Chamber of Commerce* explicitly held that the five-part test captured the essence of the common law definition of a fiduciary that Congress intended to incorporate when enacting ERISA. *Id.* at 365. Specifically, the five-part test "contemplate[s] an intimate relationship between adviser and client beyond ordinary buyer-seller interactions," that reflects the settled understanding of what Congress intended in using the term "investment advice for a fee" in ERISA. *Chamber of Commerce*, 885 F.3d at 374-76  The DOL's real disagreement is thus with the *Chamber of Commerce* decision itself, not how Plaintiffs have characterized it in the Motion. Remarkably, the Response never discusses what the Fifth Circuit said about the five-part test, citing instead to a handful of district court cases—including the district court opinion that was reversed in *Chamber of Commerce*—to argue that prior regulation represented a narrowing of the statutory test.[2] Obviously, these cases provide no support for the DOL's arguments here given the

---

[2] Response at 8 (citing *Mkt. Synergy Grp, Inc. v. Dep't of Labor*, No. 16-CV-4083-DDC-KGS, 2017 WL 661592 (D. Kan. Feb. 17, 2017), *Chamber of Com. of the U.S. v. Hugler*, 231 F. Supp. 3d 152 (N.D. Tex. 2017), and *Nat'l Assoc. for Fixed Annuities v. Perez,* 217 F. Supp. 3d 1 (D.D.C. 2016)).

Fifth Circuit's later decision in *Chamber of Commerce*.

Relatedly, the Response asserts that Plaintiffs claim the five-part test is set in stone and the DOL is precluded from promulgating any further regulation on this issue. [Response at 2, 17, 23, 27.] However, the DOL's citations to statements of Plaintiffs' position demonstrate nothing of the kind. [Response at 27 (citing Motion at 16 describing the 1975 Regulation as "a correct implementation of the standard Congress articulated" in ERISA).] And the DOL's strawman argument is further refuted by Plaintiffs' unequivocal statements to the contrary. [Motion at 18 ("It is, of course, conceivable that the DOL could come up with a new definition of what constitutes fiduciary investment advice that would be consistent with the statutory text. But that is not what it has done.").] To be clear, Plaintiffs have argued only what the Fifth Circuit held: the five-part test captures the "essence" of a common law fiduciary relationship of trust and confidence that Congress incorporated in ERISA, and any new rule must also comport with that Congressional intent. The fact that the DOL is intent on mischaracterizing Plaintiffs' position in the Response speaks volumes about the lack of substantive merit to its own legal argument.

**C. The 2024 Fiduciary Rule is Not Consistent with *Chamber of Commerce*.**

Cognizant of the problem with arguing that *Chamber of Commerce* was wrongly decided, the Response also puts forward a series of disjointed arguments under the rubric that the 2024 Fiduciary Rule is consistent with the trust and confidence standard described by the Fifth Circuit. Each of these arguments is without merit.

First, the DOL attempts to distinguish *Chamber of Commerce* by suggesting that, unlike the 2016 Fiduciary Rule, the 2024 Fiduciary Rule would not apply to a broker's cold call recommendation to a retirement investor to purchase a particular stock. [Response at 21.] *See Chamber of Commerce*, 885 F.3d at 369. However, this effort to limit *Chamber of Commerce*'s

holding to just the most extreme example described in the opinion is belied by the Fifth Circuit's detailed discussion of the distinctions between investment advisors and financial salespeople generally in construing the meaning of fiduciary in ERISA. Moreover, contrary to the DOL's argument here, the text of the 2024 Fiduciary Rule itself reflects that the broker even in that scenario would likely be deemed a fiduciary because the new rule aligns fiduciary status with a broker or agent's compliance with the regulatory standards promulgated by the SEC or NAIC. Assuming the broker in the hypothetical transaction complies with SEC's Reg BI, the DOL would say the broker is a fiduciary. Regardless, this is merely the most extreme example cited by the Fifth Circuit as part of its larger rationale on why the DOL overreached then, and overreaches now, by sweeping everyday agents and brokers into its fiduciary definition.

Next, the DOL argues that the 2024 Fiduciary Rule simply "responds to *Chamber*'s invitation that '[t]o the extent . . . that some brokers and agents hold themselves out as advisors to induce a fiduciary-like trust and confidence, the solution is for an appropriately authorized agency to craft a rule addressing that circumstance[.]'" [Response at 21-22 (quoting *Chamber of Commerce*, 885 F.3d at 379 n.13)]. To make this argument, however, the Response disingenuously cuts off the quoted language from *Chamber of Commerce*, which says in context that "the solution is for an **appropriately authorized agency** to craft a rule addressing that circumstance, ***not to adopt an interpretation that deems the speech of a salesperson to be that of a fiduciary***[.]" The highlighted language is critical and underscores the recurring, fundamental flaw in the DOL's rulemaking. Because the DOL is not the "appropriately authorized agency" to issue rules regarding any claimed misleading sales tactics by brokers or insurance agents generally, it has once again resorted to "adopt[ing] an interpretation [of ERISA] that deems the speech of a salesperson to be

that of a fiduciary" to get to the desired result.[3] Rather than conforming to the Fifth Circuit's holding, therefore, the 2024 Fiduciary Rule defies it.

Finally, the DOL asserts the 2024 Fiduciary Rule passes muster under *Chamber of Commerce* because it only addresses those scenarios in which retirement investors have an expectation that they can rely on an agent's recommendation as intended to advance their best interest. However, the rule makes clear this standard will be met simply by virtue of a financial professional having complied with the standards and practices that stockbrokers and insurance agents must adhere to in any transaction. The Response characterizes this as a "totality-of-the-circumstances test" that "comports with how courts approach common law fiduciary issues outside of ERISA." [Response at 22.] That is not remotely true. The 2024 Fiduciary Rule instead imposes fiduciary responsibility on any ordinary agent or broker who follows the rules of their industry, regardless of the extent, length, or nature of their relationship with a particular client.[4] Indeed, the Response does not even attempt to refute Plaintiffs' point that the rule will effectively turn every sale of an annuity to a retirement investor into a fiduciary encounter, just as the 2016 Fiduciary

---

[3] The DOL professes concern that, in the absence of its new broader conception of who is a fiduciary, marketing statements such as those by Plaintiff ProVision Brokerage that "it 'is driven by making a difference in the financial health of people's lives' and that '[t]he needs/goals/wants of those we serve are the only thing that matters'" allow ProVision to recommend annuities "with no accountability to actually act in their clients' best interest." [Response at 24.] This ignores, however, that insurance agents *are* accountable to meet the best interest standards of the NAIC Model Regulation, and there is nothing about the quoted statements inconsistent with that obligation. Regardless, the larger point remains that the DOL's alleged concern cannot be lawfully addressed by re-defining every insurance agent's sales recommendation as fiduciary investment advice.

[4] Although the DOL touts that the preamble to the 2024 Fiduciary Rule uses the term "trust and confidence" 80 times [Response at 23, n. 9], the text of the rule itself does not use those words at all, nor does the preamble or rule attempt to define what facts and circumstances would establish such a relationship at common law. Instead, the rule incorporates four criteria [Motion at 16–17] that mirror the minimum sales practice standards with which stockbrokers and insurance agents must already comply, thereby automatically rendering every one of them an ERISA fiduciary.

Rule did.

Although the Response tries to re-label this as the special relationship of trust and confidence *Chamber of Commerce* required, the DOL is ultimately relying on nothing more than the SEC and NAIC regulatory regimes to bootstrap into existence a fiduciary relationship that the Fifth Circuit held would ordinarily be "inconceivable." *Chamber of Commerce*, 885 F.3d at 380. The Response admits that, because the SEC and NAIC regulations impose certain obligations on brokers and agents in their sales practices, they will "satisfy ERISA's functional fiduciary test" as well. [Response at 31, 36.] The DOL takes this position despite acknowledging that those regulations explicitly do ***not*** create a fiduciary relationship. [Response at 30-32.] Under the 2024 Fiduciary Rule, therefore, an insurance agent recommending the sale of an annuity to a retirement investor will be an ERISA fiduciary even though no established, intimate relationship of trust and confidence required under common law exists, and despite the fact that the professional conduct and practice standards that regulate sales conduct expressly do not impose a fiduciary obligation.

The Response's arguments regarding the effect of the NAIC Model Regulation are particularly confounding, as the DOL vacillates between making them the source of the claimed ERISA fiduciary duty and, in the next breath, arguing they are far less stringent than duties ERISA imposes, which the DOL asserts "are the highest known to the law." 89 Fed. Reg. 32122, 32136 (April 25, 2024) (cleaned up). Plaintiffs agree that the NAIC sales conduct standards are a far cry from a common law fiduciary obligation.[5] That is by design and in obvious recognition of the same

---

[5] While FACC and the other Plaintiffs, who are independent insurance agents, focus on the NAIC Model Regulation, the same disconnect is found in the DOL's position on the SEC's Reg BI that governs stockbrokers. Like the NAIC Model Regulation, Reg BI specifically rejected the imposition of a fiduciary duty on brokers generally. 84 Fed. Reg. 33318, 33321(July 12, 2019). Contrary to the DOL's suggestion that was only because brokers are not subject to an ongoing duty to monitor [Response at 30], the SEC emphasized a number of important distinctions between brokers and fiduciary investment advisers. *Id*. at 33321 ("We have declined to subject broker-

central premise relied on by the Fifth Circuit—the typical insurance agent selling an annuity is not a fiduciary. By simultaneously relying on those standards for the 2024 Fiduciary Rule while deprecating their effectiveness in protecting retirement investors, the DOL again highlights the fundamental problem. The 2024 Fiduciary Rule is not a legitimate attempt to more precisely define what constitutes an investment advice fiduciary in a manner consistent with *Chamber of Commerce*. Nor is it simply a recognition of a pre-existing fiduciary duty imposed on agents under state insurance law, whether statutory or common law. It is instead an attempt to impose a fiduciary obligation on insurance agents because the DOL—not Congress—believes it is necessary to protect retirement investors. As the Fifth Circuit made clear, the DOL does not have the authority to make such policy decisions pursuant to its limited role in defining "accounting, technical and trade terms" used in ERISA and promulgating PTEs. *Chamber of Commerce*, 885 F.3d at 364.

Rather than grapple with this issue directly, the DOL counters with yet another strawman argument, falsely accusing Plaintiffs of claiming the insurance industry is entirely exempt from ERISA. [Response at 34-35.] Plaintiffs' arguments are not based on a purported categorical exemption, however, but instead flow directly from the text of ERISA and the Fifth Circuit's detailed opinion in *Chamber of Commerce*. Although the Response insists the DOL "*is* the appropriate regulatory body overseeing ERISA's fiduciary definition" [Response at 36 (emphasis original)], that does not mean the DOL itself can impose a fiduciary duty on parties dealing with

---

dealers to a wholesale and complete application of the existing fiduciary standard under the Advisers Act because it is not appropriately tailored to the structure and characteristics of the broker-dealer business model (i.e., transaction-specific recommendations and compensation), and would not properly take into account, and build upon, existing obligations that apply to broker-dealers, including under FINRA rules."). Moreover, along with Reg BI the SEC issued guidance on the "solely incidental" prong of the Investment Advisers Act's broker-dealer exemption, which reinforced the exemption's breadth by declaring a broker's "[a]dvice need not be trivial, inconsequential, or infrequent to be consistent with the solely incidental prong." 84 Fed. Reg. 33681, 33685 (July 12, 2019).

retirement investors when Congress did not. And the Fifth Circuit has made it abundantly clear that the DOL likewise cannot perform an end run around Congress 50 years after ERISA's adoption in order to administratively impose such duties by using its definitional authority to warp the meaning of fiduciary as it was understood at common law. *Id*. at 379 ("A perceived 'need' does not empower DOL to craft *de facto* statutory amendments or to act beyond its expressly defined authority."). Like the 2016 Fiduciary Rule before it, the 2024 Fiduciary Rule goes far beyond merely defining technical terms to rewriting the statute Congress enacted.

### D. The 2024 Fiduciary Rule Impermissibly Equates Sales Commissions with a Fee for the Provision of Investment Advice.

The Response fails to address the substance of Plaintiffs' argument that the 2024 Fiduciary Rule does not properly distinguish between a fee or other compensation for investment advice and a commission paid for a completed sale. *Chamber of Commerce*, 885 F.3d at 372-73 (2016 Fiduciary Rule improperly "conjoin[ed] 'advice' with a 'fee or other compensation, direct or indirect,'" but ignore[d] the preposition 'for,' which indicates that the purpose of the fee is not 'sales' but 'advice'") (cleaned up). The DOL merely reiterates its position that a fee for investment advice may, under particular circumstances, take the form of a commission, and argues Plaintiffs are urging a blanket rule exempting any commission-based compensation. That is exactly backwards. The Motion acknowledges there can be circumstances in which an insurance agent is paid a commission, a portion of which is a fee for investment advice to a client if the historical five-part test is otherwise met. [Motion at 21, n. 11.] Although the DOL argues here that the 2024 Fiduciary Rule describes that type of facts and circumstances test, the text of the rule itself refutes this argument. 89 Fed. Reg. at 32257 (requirement that investment advice is provided "for a fee or other compensation, direct or indirect," is satisfied if an agent "receives any explicit fee or compensation, from any source, for the investment advice *or* … receives any other fee or other

compensation, from any source, *in connection with or as a result of the recommended purchase*"). The new definition thus eliminates any requirement that the agent's compensation is "for," expressly or impliedly, investment advice—the exact problem identified by the Fifth Circuit.

Thus, it is the DOL that is attempting to impose a blanket rule that equates all sales commissions with fees for investment advice. Indeed, the 2024 Fiduciary Rule does not even allow for the possibility of an exception to this newly minted equivalency. If an insurance agent recommends that a retirement investor purchase an annuity and complies with the NAIC standards governing such sales, then any commission the agent receives will necessarily be deemed a fee for investment advice under the 2024 Fiduciary Rule. This stands *Chamber of Commerce* on its head, and the Court should reject the DOL's brazen defiance of the Fifth Circuit's holding.

### E. The 2024 Fiduciary Rule and Amended PTE 84-24 Improperly Attempt to Expand the DOL's Regulatory Authority by Conflating Title I and Title II Plans.

The Response disputes Plaintiffs' contention that the 2024 Fiduciary Rule and amended PTE 84-24 trample the boundaries of the DOL's regulatory authority over IRAs, but it fails to put forward any meaningful arguments to the contrary. In this regard, the DOL asserts that "Plaintiffs cite no authority for the proposition that 'the DOL does not have supervisory or regulatory authority with respect to IRAs'" [Response at 28], ignoring the extended discussion of this very issue in *Chamber of Commerce* that Plaintiffs cited. *Chamber of Commerce*, 885 F.3d at 364 ("Title I of ERISA confers on the DOL far-reaching regulatory authority over employer- or union-sponsored retirement and welfare benefit plans," but "Title II did not authorize DOL to supervise financial service providers to IRAs in parallel with its power over ERISA plans"). The rest of the argument on this point consists only of a description of the source of DOL's definitional and PTE-granting authority with respect to IRAs in parallel with Title I plans. Of course, Plaintiffs have not disputed that limited authority. As *Chamber of Commerce* explained, however, that authority can

be abused, as the DOL has done once again.

The Motion lays out the various ways in which the 2024 Fiduciary Rule and amended PTE 84-24 attempt to stealthily erase the boundary line between the DOL's authority over Title I and II plans. [Motion at 21-24.] These include, among others, provisions that: (1) state even a one-time recommendation to roll over assets from a Title I employee benefit plan into an IRA will constitute fiduciary investment advice to the Title I plan; (2) decree that any recommendation as to the investment of IRA assets following a rollover carries with it at least an implied recommendation to liquidate the investor's assets in the employer plan and is therefore also fiduciary investment advice to the Title I plan; and (3) impose the loyalty and prudence obligations contained in Title I on insurance agents in IRA transactions.[6] The Response has nothing to say in response to any of those points, and the DOL has thus effectively conceded Plaintiffs are correct.

### F. The 2024 Fiduciary Rule and Amended PTE 84-24 are Unreasonable, Arbitrary, and Capricious.

The Motion also sets forth why, even if the 2024 Fiduciary Rule and amended PTE 84-24 were properly authorized under ERISA, they would nevertheless still constitute an arbitrary and capricious exercise of the DOL's power in violation of the APA. In this regard, the Motion describes a number of aspects of the amendment to PTE 84-24 that are unreasonable. [Motion at 29.] The DOL responds only to Plaintiffs' argument that insurance agents must acknowledge and disclose that they are fiduciaries under the new rule, asserting Plaintiffs' concerns are speculative and that such an acknowledgement will not affect an agent's potential liability as a fiduciary

---

[6] The DOL's abuse of its PTE granting authority to impose Title I requirements on IRA product sales, along with its strategy of redefining the term "recommendation" broadly to conflate distinct transactions involving the removal of assets from one plan and investment in another, both contravene the holdings in cases such as *Chamber of Commerce, Beeson, Carfora,* and *American Securities Ass'n* for the reasons discussed in the Motion. [Motion at 21-24.]

outside the confines of ERISA. [Response at 37.][7] The only support DOL offers for these assurances is that Plaintiffs have not identified an instance where a fiduciary acknowledgement led to state law liability. It defies common sense, however, to argue that agents who comply with amended PTE 84-24's requirement will not be exposed to the risk of liability as a fiduciary for all purposes.

The DOL also fails to meaningfully rebut Plaintiffs' argument that, coupled with the 2024 Fiduciary Rule, amended PTE 84-24 contravenes Congress's intent in the Dodd-Frank Act by supplanting state insurance regulation with respect to the sale of annuities, which the Fifth Circuit held was unreasonable in *Chamber of Commerce*. 885 F.3d at 385-86. The Response argues the Dodd-Frank provision referenced by the Fifth Circuit only restricts regulation of annuities by the SEC and not by the DOL under ERISA. [Response at 38 (citing 89 Fed. Reg. at 32138 & nn.146-147).] Of course, this argument is contrary to the Fifth Circuit's holding, which condemned **the DOL**'s attempted regulation of FIAs in the 2016 Fiduciary Rule. Again, the DOL misses the point the Fifth Circuit was making, which was that Congress expressed its confidence in state insurance regulation over federal regulation of FIAs, whether by the SEC or the DOL. Allowing the DOL to now go even further to impose a regulatory regime on all annuities (fixed and indexed) without

---

[7] The DOL also disputes Plaintiffs' assertion that the major questions doctrine should apply here. [Response at 18.] However, this point of contention between the parties is now moot. The major questions doctrine developed as a limitation on the deference afforded to federal agencies under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984), when those "agencies assert[ed] highly consequential power beyond what Congress could reasonably be understood to have granted." *W. Virginia v. Env't Prot. Agency*, 142 S. Ct. 2587, 2609 (2022). Just today, however, the Supreme Court overruled *Chevron* entirely in *Loper Bright Enterprs. v. Raimondo*, No. 22-451, 2024 WL 3208360 (U.S. June 28, 2024). While time does not permit a full discussion of *Loper* here, it is sufficient to note the opinion's holding that courts "must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires" and "need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Id.* at *22.

express Congressional authorization circumvents Congress's intent.

### G. The Balance of Harms and Public Interest Support the Issuance of a Preliminary Injunction.

The Response explicitly does not contest that Plaintiffs will suffer irreparable harm if the 2024 Fiduciary Rule and amended PTE 84-24 go into effect. [Response at 14, n.5.] Thus, the DOL has not offered any evidence refuting the various harms to the Plaintiffs that are enumerated in the declarations supporting the Motion, including the substantial administrative, legal, and compliance costs they will be forced to incur in the next 90 days. Nor does it (1) attempt to argue that those costs and burdens are avoidable or curable, or (2) dispute that retirement investors will have less access to annuity products if the 2024 Fiduciary Rule goes into effect on September 23, 2024. Instead, the DOL simply asserts that the balance of harms and public interest weigh against the preliminary injunction because Plaintiffs would be able to continue receiving compensation for the sale of annuities under amended PTE 84-24 "so long as they comply with the impartial conduct standards and provide a fiduciary acknowledgment." [Response at 38-39.] As spelled out in the Motion, however, the conditions of amended PTE 84-24 are unworkable for independent insurance agents. [Motion at 29.] Moreover, once Plaintiffs provide customers with a fiduciary acknowledgment in order to comply with amended PTE 84-24, they will have already suffered significant irreparable injury. That bell cannot be unrung—their customers will appropriately consider them to be fiduciaries and they will be subject to all of the duties, obligations, and legal exposure that accompany such status.

Furthermore, while the DOL erroneously characterizes the issuance of the injunction as "returning to the *status quo ante* of the 1975 Regulation," the injunction does not seek to change the status quo, but rather to prevent the DOL's attempt to wrongfully alter the status quo that has existed for the past 50 years. The Response offers no legitimate argument (much less supporting

evidence) as to how preserving the status quo during the comparatively brief pendency of this case will result in any harm to the DOL or any particular burden on public interests. *See, e.g., Career Colleges & Sch. of Texas v. United States Dep't of Educ.*, 98 F.4th 220, 254 (5th Cir. 2024) (injunction against new agency rule will not harm functioning of the agency or financially injure the public). The balance of harms and public interest factors thus heavily favor granting a preliminary injunction.

### H. Preliminary Injunctive Relief Should Not be Limited to Plaintiffs.

Finally, the Court should reject the DOL's request that any preliminary injunction be limited to Plaintiffs only. As it reaffirmed just last week, the Fifth Circuit has "repeatedly" held that vacatur is "the 'default' remedy for unlawful agency action." *Braidwood Mgmt., Inc. v. Becerra*, No. 23-10326, 2024 WL 3079340, at *14 & n. 101 (5th Cir. June 21, 2024) (citing cases). And, regardless of any concerns around nationwide injunctions in other contexts, the Fifth Circuit has recognized that they are appropriate in APA cases such as this, because they are commensurate with the vacatur remedy and fall in one of the narrow categories that are "particularly appropriate for universal injunctive relief," *i.e.*, where there is need to ensure uniformity and consistency in the enforcement—or prevention of enforcement—of federal laws or regulations. *Id*. at *16 & n. 122 (citing cases).

### III. CONCLUSION

For the foregoing reasons and those set forth in the Motion, Plaintiffs respectfully request that the Court grant the Motion and enter an order staying the effective date of the 2024 Fiduciary Rule and amendments to PTE 84-24, preliminarily enjoining their enforcement pending a final judgment in this case, or both.

Dated:  June 28, 2024                     Respectfully submitted,

                                                   By: */s/ Don Colleluori*
                                                      Andrew G. Jubinsky
                                                      Texas Bar No. 11043000
                                                      andy.jubinsky@figdav.com
                                                      Parker D. Young
                                                      Texas Bar No. 22204050
                                                      parker.young@figdav.com
                                                      Don Colleluori
                                                      Texas Bar No. 04581950
                                                      don.colleluori@figdav.com

                                                  **FIGARI + DAVENPORT, LLP**
                                                  901 Main Street, Suite 3400
                                                  Dallas, Texas 75202
                                                  T: (214) 939-2000
                                                  F: (214) 939-2090

                                                  **ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

      I hereby certify that on June 28, 2024, a true and correct copy of the above and foregoing document has been served electronically using the CM/ECF system, which will subsequently send copies to all counsel of record registered to accept electronic service in this matter, and via email on the following:

Galen N. Thorp  
Alexander N. Ely  
UNITED STATES DEPARTMENT OF JUSTICE  
Civil Division, Federal Programs Branch  
1100 L Street NW  
Washington, DC 20005  
galen.thorp@usdoj.gov  
alexander.n.ely@usdoj.gov  
*Attorneys for Defendants*

                                            */s/ Don Colleluori*  
                                            Don Colleluori